# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL THREAT** | ) | |
| 4819 Delevan Drive | | |
| Lyndhurst, OH 44124 | ) | |
| | | |
| and | ) | |
| | | |
| **MARGARITA NOLAND-MOORE** | ) | |
| 18012 Marcella Road | | |
| Cleveland, OH 44119 | ) | **C O M P L A I N T** |
| | | |
| and | ) | **Trial by Jury Endorsed Hereon** |
| | | |
| **PAMELA BEAVERS** | ) | |
| 9621 Thorn Avenue | | |
| Cleveland, OH 44148 | ) | |
| | | |
| and | ) | |
| | | |
| **LAWRENCE WALKER** | ) | |
| 290 Eaton Ridge Drive | | |
| Sagamore Hills, OH 44067 | ) | |
| | | |
| and | ) | |
| | | |
| **REGINALD ANDERSON** | ) | |
| 9736 Gates Avenue | | |
| Cleveland, OH 44105 | ) | |
| | | |
| Plaintiffs, | ) | |
| | | |
| | ) | |
| -vs- | | |

**CITY OF CLEVELAND**                    )
  601 Lakeside Avenue
  Cleveland, OH 44114                )

     and                             )

**NICOLE CARLTON,** personally and    )
in her official capacity as
Commissioner, City of Cleveland        )
Division of Emergency Medical Services
  1701 Lakeside Avenue               )
  Cleveland, OH 44114

                               )
                       Defendants.

## NATURE OF THE ACTION

1.    This is an action instituted, *inter alia*, under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-1, *et seq.*, as amended (2019 Supp.), and the Civil Rights Act of 1871, 42 U.S.C. §1983, as amended (2019 Supp.) and various state laws to vindicate state and federally protected rights against unlawful employment practices on the basis of race, gender and retaliation.

## JURISDICTION

2.    This present and continuing action is authorized and instituted pursuant to Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-6(f) (2019 Supp.) (hereinafter referred to as "Title VII") in accordance

with Notice of Suit Rights issued by the U.S. Equal Employment Opportunity Commission which accompany this complaint as Exhibit 1.

3.    With respect to constitutional claims of violations of the Equal Protection Clause of the Fourteenth Amendment through the Civil Rights Act of 1871, 42 U.S.C. § 1983, jurisdiction is asserted pursuant to 28 U.S.C. §1331 and 28 U.S.C. §§1343 (3) and (4). Jurisdiction is asserted likewise with respect to declaratory relief pursuant to 28 U.S.C. §§ 2202-2202.

4.    With respect to state claims under the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.* (2019 Supp.) and other state claims, jurisdiction is asserted pursuant to 28 U.S.C. §1367.

## VENUE

5.    Plaintiffs and Defendants are citizens of the United States which includes a municipal corporation organized under the laws of the State of Ohio and venue exists within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division because all parties are located within Cuyahoga County, Ohio and because the unlawful employment practices alleged were and continue to be committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division.

## PARTIES

6.    Plaintiffs Michael Threat, Margarita Noland Moore, Pamela Beavers, Lawrence Walker and Reginald Anderson are African American Captains

employed by the City of Cleveland's Division of Emergency Medical Services ("EMS") who, at all relevant times, were and continue to be employed by Defendant City of Cleveland and whose terms and conditions of employment are controlled by Defendant Nicole Carlton.

7. Defendant City of Cleveland is an "employer" as defined by Title VII and acting under color of state law for purposes of claims asserting violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

8. Defendant Nicole Carlton has been, is presently and continues to be at all relevant times the Commissioner of the City of Cleveland's Division of Emergency Medical Services (EMS) which empowers her under color of state law to control work shifts schedules and other terms and conditions of public employment for Captains working for Defendant City of Cleveland's division of Emergency Medical Services.

9. At all relevant times, Defendant City of Cleveland has been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b) and (g).

## **GENERAL ALLEGATIONS**

10. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

11.   Plaintiffs Captain Michael Threat, Captain Pamela Beavers, Captain Margarita Moore, Captain Reginald Anderson and Captain Lawrence Walker work in the Division of Emergency Medical Services (EMS) for Defendant City of Cleveland.

12.   Plaintiffs Captain Michael Threat, Captain Pamela Beavers, Captain Margarita Moore, Captain Reginald Anderson and Captain Lawrence Walker work under Defendant Nicole Carlton as Commissioner of the Division of Emergency Medical Services (EMS) of Defendant City of Cleveland.

13.   Plaintiff Captain Michael Threat moved from Alabama as a young man because of enforced racial segregation.

14.   When he and his family would visit his Alabama family, he experienced the consequences of the vestiges of open racial segregation and the enduring pain of those experiences.

15.   Similar experiences were suffered by the other African American Captains both prior to starting work at EMS and during their service at EMS.

16.   Defendant City of Cleveland has been and continues to be aware of the historical supremacist problems within the division of Emergency Medical Services.

17.   Historically, work shifts within the Defendant City of Cleveland's Division of Emergency Medical Services have been governed by seniority for Captains.

18.   In the fall of each year, Captains have the opportunity to bid on the following year's schedule based on seniority.

19.   Based on seniority alone, persons employed as Captains with the longest tenure within Defendant City of Cleveland's Division of Emergency Medical Services get to select whether they work day shift or night shift and be on the "A" or "B" key.

20.   "A" or "B" key indicates which days of the pay period persons work.

21.   In roughly 2011, Plaintiffs' contract with Defendant City of Cleveland permitted the EMS Commissioner to transfer up to four captains from their chosen shift and key.

22.   Any shift changes made by the EMS Commissioner were to be based on job class seniority.

23.   The goal was to avoid having a shift with too many inexperienced captains.

24.   Plaintiffs observed early on that Defendant Nicole Carlton would only move either African American captains or female captains.

25.   Since the time of the contract change, Defendants City of Cleveland and Nicole Carlton have never transferred a white male for a white male.

26.   In or around 2014, Plaintiff, Captain Lawrence Walker, had chosen his shift/key for the year.

27.   Captain Walker was notified that he was being transferred to a different shift/key.

28.   Plaintiffs noticed that Walker had coincidentally selected a shift/key where there would have been a majority of African Americans.

29.   Based upon Defendant Nicole Carlton's past conduct and Plaintiff Lawrence Walker's transfer, Plaintiffs questioned the City of Cleveland and Carlton about the change.

30.   Defendants City of Cleveland and Nicole Carlton responded that the contract gave them the power to move whomever they wanted.

31.   In the fall of 2017, the Captains all entered their bids as they had in the past.

32.   After the bidding process was complete, one of the shifts contained four African Americans.

33.   Shifts were only comprised of four individuals.

34.   Defendants City of Cleveland and Nicole Carlton, based on the results of the bidding, chose to transfer a black male and replace him with a white male in order to ensure that there was not a shift of all African Americans.

35.   After the move was made, Plaintiffs inquired with Defendant Nicole Carlton about the reason for the move.

36.   Carlton's explanation for the move to Plaintiffs was "I cannot have a shift with all blacks on it."

37. The sole reason for the employment action by Defendants City of Cleveland and Carlton was on account of race and not job class seniority.

38. Plaintiffs explained to Defendant Nicole Carlton that the practice of moving African Americans off of certain shifts on the basis of race and gender was unlawful.

39. Defendant Carlton responded that she could do whatever she wanted because of the contract.

40. On October 11, 2017, Plaintiff Margarita Moore emailed Carlton expressing concern that the City of Cleveland and Carlton were discriminating against the African American captains based upon race.

41. Carlton did not respond to the email.

42. The Plaintiffs then initiated the grievance process.

43. During the grievance process and after Defendants Carlton and City of Cleveland openly admitted that race and gender were being used in determining who and where a captain would serve on each shift, Plaintiffs filed a dual charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission("EEOC") based upon the discrimination they were experiencing.

44. The OCRC found probable cause on Plaintiffs' charges and ordered that an attempt to resolve under the Ohio law be approached through conciliation.

45.    The OCRC and the City of Cleveland conciliated the matter without the consent of Plaintiffs.

46.    After the finding of probable cause of employment discrimination, a white captain who was transferred onto the shift with three other African Americans stepped down from his captain position.

47.    The vacancy on the shift/key was to be filled by the bidding process.

48.    Two African American captains with a high level of seniority bid on the shift/key.

49.    One Caucasian male with less seniority than the two African American Captains also bid to be moved to the shift.

50.    Inexplicably, a white captain was permitted by Defendants City of Cleveland and Nicole Carlton to "jump" over the two African Americans who had more seniority.

51.    The white captain was given the shift/key by the Defendants.

52.    Because of Defendants City of Cleveland's and Nicole Carlton's governmental policy of barring all African American Captains on one shift, the pattern and practice of government-sanctioned racial exclusion continued to be implemented.

53.    After the transfer was challenged through the grievance process, Carlton and the City of Cleveland defended their actions by stating that she and the City of

Cleveland had the right to "balance" the number of minorities and women on each shift.

54.  Defendants City of Cleveland and Carlton candidly admitted that race and gender were restrictions on captains on shift assignments.

55.  After Carlton and City of Cleveland confirmed again that race and gender were part of a governmental practice in restricting the choice of shifts based on the race and gender of a captain, Plaintiffs Reginald Anderson and Pamela Beavers filed separate dual charges with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") based upon the governmental policy of discrimination they were experiencing.

56.  The OCRC also found probable cause on the subsequent charges and ordered that conciliation be attempted.

57.  OCRC and the City of Cleveland once again conciliated the matter without the consent of Plaintiffs.

58.  In July 2018, when the Ohio Civil Rights Commission indicated it had made a probable cause finding, a news story ran in Northeast Ohio about the finding of intentional racial discrimination practiced by the City of Cleveland and implemented by Carlton.

59.  The City of Cleveland and Carlton were angered about both the finding of discrimination by the OCRC and the subsequent news coverage.

60.   In retaliation for the finding and because Plaintiffs had filed the charges against the City of Cleveland, Defendant City of Cleveland filed an unfair labor practice charge against Plaintiffs.

61.   Defendants knew that no unfair labor practice occurred and used the mechanism to retaliate against the Plaintiffs.

62.   Defendants City of Cleveland and Carlton only filed the unfair labor practice charge because of the public findings by the OCRC and the bad press that followed.

63.   Defendants knew that the OCRC findings were public record and that a television station obtained the information from the Central Office of the OCRC in Columbus, not from the Plaintiffs.

64.   Defendant City of Cleveland's allegations of an unfair labor practice by the Plaintiffs, which were allegedly founded on the Plaintiff "leaking" the public finding of the OCRC to the media, were not true.

65.   Based upon the unfair labor practice allegations and threats from the Defendants, Plaintiffs filed a subsequent OCRC/EEOC dual charge of retaliation.

66.   Defendant City of Cleveland's intentions were proven when it offered to drop the unfair labor practice allegations against Plaintiffs if Plaintiffs agreed to withdraw their retaliation charges pending before the OCRC.

67.  Defendant City of Cleveland routinely told Plaintiffs "be careful" whom you accuse of discrimination in an effort to force them to withdraw their retaliation charges.

68.  Defendant City of Cleveland then started a campaign of punishment against Plaintiffs who had filed retaliation charges.

69.  Defendant City of Cleveland charged Plaintiff Pamela Beavers with violations of the "sick abuse policy" which restricted her from calling off for a period of eighteen (18) months.

70.  Plaintiff Pamela Beavers was punished by Defendant City of Cleveland for being late for a total of seven (7) minutes when others who had not filed discrimination or retaliation charges with the OCRC were not punished for severe sick abuse policy violations.

71.  Defendant City of Cleveland  punished Ms. Beavers while ignoring at least three (3) white captains who had violated the same or similar policy

72.  Each of the white captains who had not filed charges with the OCRC were not punished or subjected to retaliation.

73.  Plaintiffs have been and continued to be anxious and concerned over continuing retaliation by Defendant City of Cleveland in their battle for equality.

74.  During the grievance process, Defendant City of Cleveland routinely told Plaintiffs it would be tough for the City of Cleveland to work with them on issues because of their exercise of the right to file discrimination and retaliation charges.

75.  Plaintiffs received notices of right to sue for their retaliation claims on June 21, 2019 and June 24, 2019.

76.  Plaintiffs received notices of right to sue on their discrimination claims on September 3, 2019.

77.  As a result of Defendants actions, Plaintiffs have suffered substantial emotional and economic damages.

78.  Plaintiffs have been subjected to knowing and overt retaliation by the Defendants.

## Count I

## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964-EMPLOYMENT DISCRIMINATION

79.  Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

80.  Plaintiffs are all African American Captains working for the City of Cleveland.

81.  Plaintiffs have been specifically discriminated against by the City of Cleveland because of their race and gender.

82.  Plaintiffs have been barred from working on the same shift with one another because of their race.

83.  Plaintiff Pamela Beavers has been barred from working with other female Captains on the same shift because of her gender.

84.   Plaintiffs have sustained extreme emotional distress and suffering on account of Defendants' unlawful discriminatory conduct.

85.   The acts and conduct of the Defendants have been intentional, malicious and in wanton and reckless disregard to the rights and feelings of the Plaintiffs.

86.   Plaintiffs has been damaged by Defendants' attempts to segregate the Captains at Cleveland EMS.

## Count II

## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- RETALIATION

87.   Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

88.   Plaintiffs each had a protected right to file their claims of discrimination with the Equal Employment Opportunity Commission and Ohio Civil Rights Commission.

89.   Plaintiffs had the right to file their charges free from fear of retaliation.

90.   Only because Plaintiffs exercised their right to file charges against the City of Cleveland did the City turn around and file an unfounded and spiteful unfair labor charge against Plaintiffs.

91.  Since Plaintiffs filed their charges against the City of Cleveland, Defendants have treated Plaintiffs differently from their white counterparts and targeted Plaintiffs for retaliation.

14

92.   Given their history working in the Division of Emergency Medical Services and the historical limitations placed on African Americans, Plaintiffs have sustained and continue to sustain extreme emotional distress and suffering solely on account of Defendants' overt discriminatory and retaliatory conduct.

93.   The acts and conduct of the Defendants have been intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiffs.

94.   Plaintiffs have been damaged by Defendants' attempts to segregate the Captains at Cleveland EMS on account of race and gender and retaliate against them as a result of their exercise of a federally protected right in filing charges with the OCRC and EEOC.

## Count III

## VIOLATIONS OF DUE PROCESS ENSURED UNDER THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

95.   Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

96.   Plaintiffs are all African American Captains working for the City of Cleveland.

97.   Plaintiffs have been specifically discriminated against by the City of Cleveland because of their race and gender and otherwise treated less favorably that white employees of the Division of Emergency Medical Services.

98. The differences in treatment by Defendant, City of Cleveland and Defendant Nicole Carlson, individually and in her official capacity as Commissioner of the Division of Emergency Medical Services were all under color of state law.

99. The differences in treatment by Defendant City of Cleveland and Defendant Nicole Carlson, individually and in her official capacity as Commissioner of the Division of Emergency Medical Services, were undertaken on account of the race of the Plaintiffs as a government-sanctioned practice of restricting terms and conditions of public employment to persons on account of race.

100. Plaintiffs have been barred from working on the same shift with one another solely on account of their race.

101. Plaintiff Pamela Beavers has been barred from working with other female Captains on the same shift because of her gender.

102. Plaintiffs have sustained emotional distress because of Defendants' discriminatory conduct.

103. The acts and conduct of the Defendants have been intentional, malicious and in wanton and reckless disregard to the rights and feelings of the Plaintiffs.

104. Plaintiffs have been damaged by Defendants' attempts to segregate the Captains at Cleveland EMS.

## Count IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

106. Being directed by their superior who is white that one cannot be permitted to work beside another co-worker on account of race would be a traumatizing and disturbing experience for any reasonable person.

107. Defendant Nicole Carlton has been and continues to be aware of the historical consequences of racism within the Division of Emergency Medical Services and clearly knew that separating the Plaintiffs as African American Captains from shifts was particularly mean-spirited and injurious.

108. The openly racist explanation of separating African American Captains under color of state law was intended and continues to be intended to inflict emotional and mental distress.

109. Defendant Nicole Carlton, in her official capacity as Commissioner of Emergency Medical Services for the City of Cleveland, clearly understood the knowing and severe consequences of her racially discriminatory statements and actions against African-American Captains of the City of Cleveland's Division of Emergency Medical Services.

110. The fear of having too many African American officers working together is rooted in supremacist attitudes and history.

111. Defendant Nicole Carlton knew the history of racist actions within EMS, knows the individual African-American Captains, and knows the racially separatist undertaking she ordered and insists on maintaining would jointly and severally inflict significant and consequential emotional distress on the Plaintiffs.

112. By ratifying the order impacting Plaintiffs on various occasions that an all-black Captain team would not be permissible, Defendants knew or should have reasonably known that they would inflict serious emotional and mental distress.

113. Defendants knowingly interfered with Plaintiffs' protected right to file charges with the EEOC and OCRC and knowingly intended to injure them for engaging in a protected activity under the laws of the United States and the State of Ohio.

114. Defendants knew they violated the laws of the United States and the State of Ohio by openly discriminating against their African American Captains and knew the only way to continue to avoid the matter would be to punish Plaintiffs.

115. Defendants knew they had the power to make work more difficult for the Plaintiffs, have done so and continue to adversely affect their shifts/keys.

116. Instituting a racially separatist policy of not allowing African American Captains to work together on the same shift and retaliating against them was intended to exceed reasonable bounds of decency and intended to generate an intolerable work environment for the Plaintiffs.

117. Defendants' actions in discriminating and retaliating against Plaintiffs proximately caused Plaintiffs' psychological injuries and loss of quality of life.

118. The mental anguish suffered by Plaintiffs is serious, consequential and should not have to be endured on account of race, gender and retaliation.

119. The acts and conduct of Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of Plaintiffs.

120. Plaintiffs have sustained significant emotional injuries arising out of the Defendants' unlawful practices and retaliation.

## Count V

## VIOLATIONS OF THE OHIO CIVIL RIGHTS ACT-EMPLOYMENT DISCRIMINATION

121. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

122. Plaintiffs are all African American Captains working for the City of Cleveland.

123. Plaintiffs have been specifically discriminated against by the City of Cleveland because of their race, gender and retaliation.

124. Plaintiffs have been barred from working on the same shift with one another because of their race.

125. Plaintiff Pamela Beavers has been barred from working with other female Captains on the same shift because of her gender.

126. Plaintiffs have sustained extreme emotional distress and suffering on account of Defendants' unlawful discriminatory conduct.

127. The acts and conduct of the Defendants have been intentional, malicious and in wanton and reckless disregard to the rights and feelings of the Plaintiffs.

128. Plaintiffs have been damaged by Defendants' attempts to segregate the Captains at Cleveland EMS on account of race.

## Count VI

## VIOLATIONS OF THE OHIO CIVIL RIGHTS ACT-RETALIATION

129. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

130. Plaintiffs each had a protected right to file their claims of discrimination with the Equal Employment Opportunity Commission and Ohio Civil Rights Commission.

131. Plaintiffs had the right to file their charges free from fear of retaliation.

132. Only because Plaintiffs exercised their right to file charges against the City of Cleveland did the City turn around and file an unfounded and spiteful unfair labor charge against Plaintiffs.

133. Since Plaintiffs filed their charges against the City of Cleveland, Defendants have treated Plaintiffs differently from their white counterparts and targeted Plaintiffs for retaliation.

134. Given their history working in the Division of Emergency Medical Services and the historical limitations placed on African Americans, Plaintiffs have sustained and continue to sustain extreme emotional distress and suffering solely on account of Defendants' overt discriminatory and retaliatory conduct.

135. The acts and conduct of the Defendants have been intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiffs.

136. Plaintiffs have been damaged by Defendants' attempts to segregate the Captains at Cleveland EMS on account of race and gender and retaliate against them as a result of their exercise of a federally protected right in filing charges with the OCRC and EEOC.

WHEREFORE, Plaintiffs urge this Court to grant the following relief:

A.    Declare that the acts and conduct of the Defendants constitute violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, the Civil Rights Act of 1871, 42 U.S.C. §1983, as amended, and Title VII of the Civil Rights Act of l964, as amended, 42 U.S.C. §§2000e, *et seq.* and pending state law claims under the Ohio Civil Rights Act, Chapter 4112 of the Ohio Revised Code and for intentional infliction of emotional distress.

B.    Grant a permanent injunction enjoining the City of Cleveland and Nicole Carlton in her official capacity as Commissioner of the Division of Emergency Medical Services, their officers, agents, employees, successors, assigns, and all persons in active concert of participation with it, from engaging in any employment

practices which discriminate on the basis of race or gender and further enjoin any acts or conduct which has the purpose or effect of retaliating against the Plaintiffs for asserting rights against discrimination based on race and gender;

C.    Order Defendants to institute and to otherwise carry out policies, practices and programs which provide equal employment opportunities for employees of all races and genders, and which eradicate the effects of its past and present unlawful employment practices; based on race, gender and retaliation;

D.    Grant to Plaintiffs, jointly and severally, from the Defendants appropriate compensatory damages.

E.    Grant to the Plaintiffs, jointly and severally, appropriate exemplary and punitive damages against Defendant Nicole Carlton personally;

F.    Grant to the Plaintiffs and against the Defendants costs in this action including statutory reasonable attorney fees as provided by law;

G.    Grant such further relief as the Court deems just, equitable and in advance of the public interest.

/s/ Jared S. Klebanow
JARED S. KLEBANOW (0092018)
KLEBANOW LAW, LLC
850 Euclid Ave. Suite 701
Cleveland, Ohio 44114
T: (216) 621-8230
jklebanow@klebanowlaw.com

/s/ Avery Friedman
AVERY FRIEDMAN (0006103)
AVERY FRIEDMAN & ASSOCIATES
850 Euclid Ave. Suite 701
Cleveland, Ohio 44114-3358
T: (216) 621-9282
avery@lawfriedman.com

*Attorneys for Plaintiffs*

## **<u>TRIAL BY JURY DEMANDED</u>**

Plaintiffs hereby demands trial by jury.

/s/ *Avery Friedman*

Avery Friedman
