UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

MICHAEL THREAT, *et al.*,                    :
                                             :      Case No. 1:19-cv-2105
                          Plaintiffs,        :
                                             :
vs.                                          :      OPINION & ORDER
                                             :      [Resolving Doc. 19]
CITY OF CLEVELAND, *et al.*,                 :
                          Defendants.        :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs sue their supervisor and employer, alleging discrimination, retaliation, violation of the Due Process Clause, and intentional infliction of emotional distress (IIED).[1] Defendants City of Cleveland and the supervisor move for partial judgment on the pleadings, arguing that Plaintiffs failed to exhaust their administrative remedies, did not suffer adverse employment actions, and failed to sufficiently plead a due process or IIED claim.[2]

For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for partial judgment on the pleadings.

## I.  Background

Plaintiffs Michael Threat, Margarita Noland-Moore, Pamela Beavers, Lawrence Walker, and Reginald Anderson are captains in Defendant Cleveland's Division of Emergency Medical Services ("EMS").[3]  This dispute comes from the EMS Division's scheduling of Plaintiffs' work shifts.

---

[1] Doc. 1.
[2] Doc. 19.
[3] Doc. 1 at 5.  These facts are taken from Plaintiffs' complaint and are viewed in the light most favorable to Plaintiffs.

Case No. 1:19-cv-2105
Gwin, J.

In each pay period, EMS schedules are divided into "A" days or "B" days.[4]  Each of these schedules is further divided into day shift or night shift.[5]  EMS Captains bid on their schedules, choosing "A" or "B" days and day or night shift.[6]

Generally, Cleveland uses seniority to assign schedules.[7]  But Plaintiffs' contract with Defendant Cleveland allows the EMS Commissioner to transfer up to four captains to a different schedule even when a transfer would not be consistent with captain seniority.[8]

In 2014 and 2017, Plaintiffs bid on schedules that would have created a shift staffed by only black captains.[9]  But Defendant City of Cleveland and the EMS Commissioner, Defendant Nicole Carlton, replaced one of the black captains with a white captain.[10]  When Plaintiffs questioned the transfer, Defendant Carlton allegedly said, "I cannot have a shift with all blacks on it."[11]

Plaintiffs filed charges with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission based on this discrimination.[12]  Nonetheless, discriminatory scheduling transfers based on race continued, so Plaintiffs filed additional charges.[13]

---

[4] *Id.* at 6.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 6-7.
[10] *Id.*
[11] *Id.* at 7.
[12] *Id.* at 8.
[13] *Id.* at 9-10.

Case No. 1:19-cv-2105
Gwin, J.

In July 2018, the Ohio Civil Rights Commission made a probable cause finding for Plaintiffs' charges.[14]  Shortly thereafter, Defendant Cleveland filed an unfair labor practice charge against Plaintiffs' union.[15]  Plaintiffs responded with retaliation charges with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission.[16]

On September 12, 2019, Plaintiffs sued Defendants, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act and the Ohio Civil Rights Act.[17] Plaintiffs also alleged violations of their due process rights under the Fourteenth Amendment to the United States Constitution and IIED.[18]

On April 29, 2020, Defendants moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[19]  Plaintiffs opposed.[20]

## II.    Legal Standard

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."[21]  A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."[22]

---

[14] *Id.* at 10.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 13-14, 19-20.

[18] *Id.* at 15-19.

[19] Doc. 19.

[20] Doc. 20.  Defendants replied.  Doc. 22.

[21] *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks and citation omitted)

[22] *Id.* at 582 (internal quotation marks and citation omitted).

Case No. 1:19-cv-2105
Gwin, J.

### III. Discussion

#### a.  Plaintiffs Moore and Walker's Discrimination Claims

Defendants argue that Plaintiffs Moore and Walker's Title VII discrimination claims must be dismissed because they failed to exhaust their administrative remedies.[23]  Title VII of the Civil Rights Act of 1964[24] requires employees alleging discrimination or retaliation to file administrative charges with the Equal Employment Opportunity Commission before suing.[25]

Plaintiff Threat claims that he filed a charge with the Ohio Civil Rights Commission on November 15, 2017, on behalf of himself and other affected individuals, including Moore and Walker.[26]  Although Defendants insist Moore and Walker must file their own charges, the "single filing rule" permits similarly situated parties to join a timely filed administrative charge.[27]

Whether Moore and Walker are sufficiently similarly situated to Threat is a question of fact.  At this stage, with the facts taken in a light most-favorable to Plaintiffs, Moore and Walker's Title VII discrimination claims, Threat's administrative charge was adequately pled to survive a motion for judgment on the pleadings.

Defendants are not entitled to judgment on the pleadings for Plaintiffs Moore and Walker's discrimination claims.

---

[23] Doc. 19 at 8.

[24] 42 U.S.C. § 2000e, *et seq.*

[25] 42 U.S.C. § 2000e-5(e)(1).  *See Barrow v. City of Cleveland*, 773 F. App'x. 254, 260 (6th Cir. 2019).

[26] Doc. 20 at 2; Doc. 20-1.

[27] *See Peeples v. City of Detroit*, 891 F.3d 622, 631-32 (6th Cir. 2018).

-4-

Case No. 1:19-cv-2105
Gwin, J.

### b.  Plaintiffs Threat and Moore's Discrimination Claims

Plaintiffs Threat and Moore claim that Defendants discriminated against them because of their race in violation of Title VII and the Ohio Civil Rights Act.[28]  In seeking judgment on the pleadings, Defendants argue that Plaintiffs' pleadings are insufficient because they do not show that Threat or Moore suffered an adverse employment action.[29]

To survive a motion for judgment on the pleadings, Plaintiffs' complaint "must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [Defendants] discriminated against [Plaintiffs] with respect to [their] compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin."[30] But Plaintiffs need not plead a prima facie discrimination case.[31]

The complaint alleges that Defendants had a pattern or practice of discrimination against African American captains when assembling shifts.[32]  Defendants may have evidence that they did not discriminate against Threat or Moore, and they may present that evidence later.  But at this stage of the litigation, Plaintiffs' complaint is sufficient.

Defendants are not entitled to judgment on the pleadings for Plaintiff Threat and Moore's discrimination claim.

### c.  Plaintiffs' Retaliation Claims

---

[28] Doc. 1 at 13, 19.
[29] Doc. 19 at 9.
[30] *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012) (internal quotation marks and citations omitted).
[31] *Id.* at 609.
[32] Doc. 1 at 9-10.

Case No. 1:19-cv-2105
Gwin, J.

All Plaintiffs allege that Defendants retaliated against them for filing discrimination claims with the Equal Employment Opportunity Commission and Ohio Civil Rights Commission in violation of Title VII and the Ohio Civil Rights Act.[33]  Defendants argue that these claims are meritless for three reasons.

First, Defendants argue that Plaintiffs Moore and Walker did not file discrimination charges against the city, so Cleveland could not have retaliated against them.[34]  But as noted above, the complaint sufficiently pleads the discrimination charge, so this argument fails.

Second, Defendants argue that they did not retaliate against Plaintiffs because Defendant City of Cleveland filed an unfair labor practice charge against Plaintiffs' union, not Plaintiffs themselves.[35]

The United States Supreme Court has recognized that, "in the Title VII context, a third-party reprisal can form the basis of a retaliation claim."[36]  Defendants argue that this doctrine does not apply because the relationship between Plaintiffs and their union is not close enough to support a third-party retaliation claim and because, under the framework applied by other courts, only the union would have standing to bring the retaliation claim.[37]

The fundamental principle behind Title VII's antiretaliation provision is that it "prohibits any employer action that well might have dissuaded a reasonable worker from

---

[33] Doc. 1 at 14, 20.
[34] Doc. 19 at 10.
[35] Doc. 19 at 10.
[36] *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 516 (6th Cir. 2017) (citing *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174-75 (2011)).
[37] Doc 22.

-6-

Case No. 1:19-cv-2105
Gwin, J.

making or supporting a charge of discrimination."[38]  While courts have acknowledged

third-party retaliation claims for adverse employment actions an employer takes against a

worker's spouse, the United States Supreme Court has also "decline[d] to identify a fixed

class of relationships for which third-party reprisals are unlawful."[39]

The complaint does not allege a plaintiff-union relationship that is close enough to

support a third-party retaliation claim.  The complaint does not suggest any significant

personal detriment from Cleveland's unfair labor practice claim against the union.  A

reasonable worker would not be sufficiently dissuaded from making a discrimination

charge from Cleveland's labor charge against the union.

Defendant Carlton also argues that she cannot be held liable for any purported

retaliation because she did not file the unfair labor practice charge, Defendant Cleveland

did.[40]  For similar reasons, the retaliation claim against Defendant Carlton fails.

Defendants are entitled to judgment on the pleadings for Plaintiffs' retaliation

claims.

### d.  Plaintiffs' Due Process Claim

Defendants argue that the complaint fails to state a valid due process claim.[41]  The

Court agrees.

All Plaintiffs allege that Defendants discriminated against them in violation of the

Due Process Clause.[42]  Plaintiffs' briefing suggests that Defendants deprived Plaintiffs of

---

[38] *Thompson,* 562 U.S. at 174 (internal quotation marks omitted).
[39] *Id.* at 175.
[40] Doc. 19 at 11.
[41] Doc. 19 at 11.
[42] Doc. 1 at 15.

Case No. 1:19-cv-2105
Gwin, J.

both substantive and procedural due process by failing to comply with shift-placement

procedures.[43]

When bringing a substantive due process claim, plaintiffs must show "a deprivation

of a constitutionally protected liberty interest" and that "the government's discretionary

conduct that deprived that interest was constitutionally repugnant."[44]  But neither Plaintiffs'

complaint nor their briefing identifies what liberty interest Defendants allegedly took away.

Plaintiff's procedural due process claim also fails.  "The [United States] Supreme

Court has explained that the central meaning of procedural due process is that '[p]arties

whose rights are to be affected are entitled to be heard; and in order that they may enjoy

that right they must first be notified.'"[45]

Plaintiffs claim Defendants failed to comply with the shift-placement procedure

because they altered shifts based on race or gender instead of seniority.[46]  But the

complaint includes no allegations that Defendants failed to give notice or a hearing when

Defendants changed the shifts.  And procedural due process does not require Defendants

to follow their own shift assignment procedures.[47]

Defendants are entitled to judgment on the pleadings for Plaintiffs' due process

claims.

---

[43] Doc. 20 at 7.
[44] *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765 (6th Cir. 2020) (quoting
[45] *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998) (second alteration in original)
(quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)).
[46] Doc. 1 at 6, 23.
[47] *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 507 (6th Cir. 2002) ("A state cannot be said to
have a federal due process obligation to follow all of its procedures; such a system would result in the
constitutionalizing of every state rule, and would not be administrable." (quoting *Levine v. Torvik*, 986 F.2d
1506, 1515 (6th Cir. 1993))).

-8-

Case No. 1:19-cv-2105
Gwin, J.

### e.  Plaintiff's IIED Claim

All Plaintiffs make an IIED claim against Defendants.[48]  In seeking judgment on the pleadings at to this claim, the Defendants say that, as a matter of law, discrimination can't support an intentional infliction of emotional distress claim.[49]

Defendants are correct that the standard for stating an IIED claim in Ohio is exacting.[50]  "[T]to state a claim for intentional infliction of emotional distress in Ohio, a plaintiff must allege that (1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish."[51]

The "outrageousness" element is a question of law for the Court to decide, and "[i]t is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with on summary judgment or in a motion to dismiss."[52]  Generally speaking, "discrimination, by itself, is insufficient to support an [IIED] claim."[53]

Even accepting all facts as true and drawing inferences in Plaintiffs' favor, none of the allegations in their complaint allege extreme and outrageous conduct.  Though

---

[48] Doc. 1 at 17.
[49] Doc. 19 at 11.
[50] *See Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.").
[51] *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosps.*, 603 N.E.2d 11226, 1132 (Ohio Ct. App. 1991)).
[52] *Id.* at 377-78.
[53] *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 257, 261 (6th Cir. 2008).

Case No. 1:19-cv-2105
Gwin, J.

offensive, Defendant Carlton's alleged statement that she could not "have a shift with all blacks on it" does not rise to the level of an IIED claim.[54]

Courts have dismissed IIED complaints with allegations of considerably more egregious behavior after finding that those complaints did not state a claim for outrageous conduct as a matter of law.[55]  Plaintiffs' allegations do not make a valid IIED claim.

Defendants are entitled to judgment on the pleadings for Plaintiffs' IIED claim.

### f.  Plaintiffs' Claims Against Defendant Carlton

All Plaintiffs allege that Defendant Carlton discriminated against them in violation of Title VII and the Ohio Civil Rights Act and retaliated against them in violation of Title VII.[56] Defendant Carlton claims that Plaintiffs cannot hold her individually liable under these statutes.[57]

Plaintiffs do not address Carlton's federal liability and therefore concede Defendant's point.[58]  But even if Plaintiffs had addressed the argument, it is well-established that Title VII does not provide for individual liability.[59]

---

[54] Doc. 1 at 7.

[55] See *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12CV1635, 2013 WL 623495, at *12 (N.D. Ohio Feb. 19, 2013) ("Here, plaintiff contends that Rossi and Wells yelled, threatened, and defamed her, continually telling others that she was insubordinate, unprofessional, young, and wild, allegedly because she did not conform to their gender stereotypes.  Courts have found, as a matter of law, that discriminatory conduct far more 'extreme' than the conduct alleged here does not meet the 'outrageousness' standard."); see also *Fuelling*, 284 F. App'x at 261-62 (collecting cases).

[56] Doc. 1 at 13, 14, 20.

[57] Doc. 19 at 13.

[58] *See Lewis v. Cleveland Clinic Found.*, No. 1:12-cv-3003, 2013 WL 6199592 at *4 (N.D. Ohio Nov. 27, 2013).

[59] *See Thomas v. Union Inst.*, 98 F. App'x 462, 469 (6th Cir. 2004).

Case No. 1:19-cv-2105
Gwin, J.

Plaintiffs do address Carlton's liability under Ohio law by claiming she aided and abetted the city's discriminatory policies in violation of Ohio Revised Code 4112.02(J).[60] This law prohibits any "person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."[61]  Plaintiffs have pleaded that Carlton was involved in the shift-assignment procedure.[62]  Thus, they meet the standard for alleging that Carlton at least aided or abetted shift-assignment unlawful conduct.

Defendant Carlton is entitled to judgment on the pleadings for Plaintiffs' Title VII claims, but is not entitled to judgment on the pleadings for Plaintiffs' Ohio claims.

## III.    Conclusion

Plaintiffs have pled colorable claims for discrimination.  But Plaintiffs have not adequately pled retaliation, IIED claims or violations of their Due Process rights, so the Court dismisses these claims.  Additionally, Defendant Carlton cannot be held individually liable for violations of Title VII, so the Court dismisses the federal discrimination and retaliation claims against her.  Plaintiffs' Ohio law claims against Carlton survive.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for judgment on the pleadings.

IT IS SO ORDERED.


Dated: July 31, 2020                           s/      *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

---

[60] Doc. 20 at 10.
[61] O.R.C. 4112.02(J).
[62] Doc. 1 at 7, 11.