UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
MICHAEL THREAT, et al., :
: Case No. 1:19-cv-2105
        Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Docs. 30 & 33]
CITY OF CLEVELAND, et al., :
:
        Defendants. :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs work as captains of the Cleveland Emergency Medical Services ("EMS") Division. Plaintiffs sued the City and their supervisor, EMS Commissioner Nicole Carlton. In their lawsuit, Plaintiffs, all African American, claim discrimination and retaliation under Title VII of the Civil Rights Act and the Ohio Civil Rights Act, Fourteenth Amendment Due Process Clause violations, and Ohio intentional infliction of emotional distress.[1]

On July 31, 2020, the Court granted in part Defendants' motion for judgment on the pleadings, finding that Plaintiffs had failed to adequately plead retaliation, intentional infliction of emotional distress, or violations of their due process rights.[2] The Court also dismissed the federal discrimination claims against Defendant Carlton, finding she could not be held individually liable.[3] As a result, only Plaintiffs' federal and state discrimination claims against the City of Cleveland and their state discrimination claim against Defendant Carlton remain.

---

[1] Doc. 1.
[2] Doc. 35.
[3] *Id.*

---

Case No. 1:19-cv-2105
Gwin, J.

Plaintiffs' discrimination claims[13] involve the 2018 shift-bidding process, beginning in fall 2017. Plaintiffs claim that Defendant Carlton misused her Collective Bargaining Agreement authority, overriding seniority to avoid having a shift with only African American captains.[14]

However, the shift-bidding forms show that during 2018, Defendant Carlton did not alter Plaintiffs Threat, Noland-Moore, Walker, or Beavers's shift assignments; they each received assignments that matched their seniority relative to the other bidders for the same shifts.[15]

But Defendant Carlton did alter Plaintiff Anderson's shift assignment. Carlton swapped Anderson's shift assignment with a white male captain on two occasions.[16] In her deposition, Carlton admitted that both times she changed Anderson's shift assignment she made the change based upon racial grounds.[17] Carlton maintained that she wanted to diversify Anderson's shifts, which otherwise would have been entirely African-American-staffed.[18]

Based on this alleged discrimination, Plaintiffs filed charges with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission.[19] In July 2018, the Ohio

---

[13] Plaintiffs initially alleged discriminatory practices in the shift bidding process for 2015 as well. However, Plaintiffs abandoned this claim by failing to develop it in the summary judgment briefing.
[14] Doc. 1.
[15] Doc. 33-2 at ¶¶11–14; Doc. 33-7; Doc. 33-8.
[16] Doc. 33-2 at ¶¶12–13.
[17] Doc. 29 at 69–70 (Anderson switched with Captain Nick Kavouras, a white male); *id.* at 83 (Anderson switched with Captain Warren James, another white male, after Kavouras self-demoted).
[18] *Id.*
[19] Doc. 32-2; Doc. 32-3.

-3-

Case No. 1:19-cv-2105
Gwin, J.

Civil Rights Commission made a probable cause finding for Plaintiffs' charges.[20] Plaintiffs obtained a right-to-sue letter.[21]

On September 12, 2019, Plaintiffs sued Defendants, alleging discrimination and retaliation in violation of Title VII and the Ohio Civil Rights Act.[22] Plaintiffs also alleged violations of their Fourteenth Amendment due process rights and Ohio intentional infliction of emotional distress.[23] On April 29, 2020, Defendants moved for judgment on the pleadings.[24]

On July 31, 2020, the Court granted in part the Defendants' motion for judgment on the pleadings, leaving only Plaintiffs' federal and state discrimination claims against the City of Cleveland and their state discrimination claim against Defendant Carlton.

Plaintiffs now move for partial summary judgment on their discrimination claims against the City of Cleveland and Defendant Carlton.[25] Defendants oppose,[26] and move for summary judgment on all claims.[27] Plaintiffs oppose.[28]

II. **Legal Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[20] Doc. 29 at 71.
[21] Doc. 1-4.
[22] Doc. 1.
[23] *Id.*
[24] Doc. 19.
[25] Doc. 30.
[26] Doc. 37.
[27] Doc. 33.
[28] Doc. 36.

Case No. 1:19-cv-2105
Gwin, J.

fact and that the movant is entitled to judgment as a matter of law."[29] A fact is material if its resolution will affect the outcome of the lawsuit.[30]

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party.[31] Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[32]

### III. Discussion

Title VII of the Civil Rights Act of 1964 forbids employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[33]

The Ohio Civil Rights Act closely tracks Title VII's language, forbidding employers "to discharge without just cause, to refuse to hire, or otherwise to discriminate against [any] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment" "because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of [that] person."[34] Because of their

---

[29] Fed. R. Civ. P. 56(c).
[30] *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) *(citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).
[31] *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997).
[32] *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).
[33] 42 U.S.C. § 2000e-2(a)(1).
[34] Ohio Rev. Code § 4112.02.

-5-

Case No. 1:19-cv-2105
Gwin, J.

textual similarities, "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations" of the Ohio Civil Rights Act.[35]

The evidentiary route Plaintiffs must follow to establish their discrimination claims at summary judgment depends on whether the record provides direct or indirect evidence of impermissible discrimination.[36] Defendant Carlton's remarks constitute direct evidence of racial discrimination.[37] The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*[38] that controls indirect evidence discrimination cases therefore does not apply.[39]

But while Plaintiffs need not establish a *McDonnell Douglas* prima facie case, they must still show a genuine dispute of material fact as to whether Defendants took a materially adverse employment action against them.[40] Not all undesirable or unfair work conditions that employees face are material for purposes of Title VII.[41] "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions."[42]

Plaintiff Anderson's shift change, while unfair and inconvenient, does not rise to the level of a materially adverse employment action. A change to night shift "is not materially

---

[35] *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471–72 (6th Cir. 2005) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)).
[36] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).
[37] *DiCarlo v. Potter*, 358 F.3d 408, 416 (6th Cir. 2004), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009).
[38] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[39] Swierkiewicz, 534 U.S. at 511. [40] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).
[40] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).
[41] *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996).
[42] *Stewart v. Esper*, 815 F. App'x 8, 17 (6th Cir. 2020) (quoting *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002)).

Case No. 1:19-cv-2105
Gwin, J.

adverse without some reduction in pay, prestige, or responsibility."[43] Anderson's shift change did not affect the basic terms of his employment; it merely temporarily affected when he worked and who he worked with.

Anderson's family life preference for day shift does not change things.[44] Courts employ an objective standard for Title VII materiality.[45] Working night shift is not objectively less desirable than day shift or viewed by the City or EMS Commissioner as a duty performed by lower-ranking employees. In fact, two captains more senior than Anderson each used their top bids on A-key and B-key nights.[46]

Nor does Defendant Carlton's discriminatory intent change the outcome.[47] The intent of the employer and the materiality of the negative employment conditions are separate inquiries.[48] Blatant discriminatory intent does not convert an immaterial employment action into a material one.[49]

Plaintiff Anderson has not shown a genuine issue of material fact as to whether he was subject to a materially adverse employment action.

---

[43] *Harper v. Elder*, 803 F. App'x 853, 858 (6th Cir. 2020); *Aman v. Potter*, 105 F. App'x 802, 807–08 (6th Cir. 2004) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769–71 (5th Cir. 2001)); *Miller v. Peck-Hannaford & Briggs Co.*, 142 F.3d 435 (6th Cir. 1998) (Table) ("A mere shift change does not amount to an adverse employment action.").

[44] *Harper*, 803 F. App'x at 858 (finding a change to night shift immaterial where the plaintiff claimed that she would miss spending time with her son as a result of the transfer); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("Title VII simply was never intended to be used as a vehicle for an employee to complain about the hours she is scheduled to work or the effect those hours have upon the time an employee spends with family members. Grube's transfer [from first to second shift] is not an adverse employment action.").

[45] *Policastro*, 297 F.3d at 539 (citing *Kocsis*, 97 F.3d 886).

[46] R.33-2 ¶ 11 (Captain Robert Raddell (white male) and Captain Carol Cavin (white female) are each more senior than Plaintiff Anderson); R.33-8, PageID.1048 (Cavin bids), 1054 (Raddell bids).

[47] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006).

[48] *Id.*

[49] *Id.*

Case No. 1:19-cv-2105
Gwin, J.

Further, Plaintiff Anderson's reliance on *Burlington Northern & Santa Fe Railway Co.* to lower the materiality standard misses. There, the Supreme Court laid out the materiality standard for *retaliation claims* under Title VII.[50] The retaliation claims standard is lower than the discrimination claims standard at issue here.[51] Thus, *Burlington* does not control this case.

Defendants are entitled to summary judgment on Plaintiff Anderson's discrimination claims under Title VII and the Ohio Civil Rights Act.

With Plaintiff Anderson's claim resolved, the remaining Plaintiffs' claims follow quickly in tow. Unlike with Anderson, Defendant Carlton never altered the remaining Plaintiffs' shifts. So, Plaintiffs claim only that they *would have been* barred from serving on an entirely African-American-staffed shift *if* they had ended up on such a shift under the bidding process. But even if Plaintiffs' claim is true, because an actual shift change under these circumstances does not meet Title VII's materiality standard,[52] a merely hypothetical shift change is insufficient as well.[53]

Defendants are entitled to summary judgment on the remaining Plaintiffs' Title VII and Ohio Civil Rights Act discrimination claims.

IV. Conclusion

For the reasons stated, the Court **DENIES** Plaintiffs' motion for partial summary judgment and **GRANTS** Defendants' motion for summary judgment on all claims.

---

[50] *Id.* at 67.
[51] *Id.*
[52] *Policastro*, 297 F.3d at 539 (citing *Kocsis*, 97 F.3d 886).
[53] *Id.*

Case No. 1:19-cv-2105
Gwin, J.

       IT IS SO ORDERED.

Dated: October 8, 2020                    s/       James S. Gwin
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE